# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | **Bankruptcy No. 13-B-80541** |
| Marta Snyder, | ) | |
| Debtor. | ) | **Adversary No. 13-A-96053** |
| _____ | ) | |
| Linda Taylor, | ) | **Chapter 7** |
| Plaintiff | ) | |
| v. | ) | **Judge Lynch** |
| Marta Snyder, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Creditor Linda Taylor asks this Court for judgment after trial to except from discharge the pre-petition judgment entered in her favor and against the Debtor in state court proceedings under 11 U.S.C. § 523(a)(6) as a debt for a willful and malicious injury. For the reasons discussed below, the Court finds a portion of the state court's judgment to be non-dischargeable. Accordingly judgment will be entered in favor of the Plaintiff in part and in favor of the Defendant in part.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Matters concerning "determinations as to the dischargeability of particular debts" are "core proceedings" under 28 U.S.C. § 157(b)(2)(I). Because such matters "stem[] from the bankruptcy itself," this Court has constitutional and statutory authority to enter a final order in this proceeding. *Stern v. Marshall*, 546 U.S. 500 (2011).

## FINDINGS OF FACT

The following sets forth the Court's findings of fact as required by Fed. R. Bankr. P. 7052.[1]

In 2007, Linda Taylor and her husband entered into a contract with the Debtor's business, Snyder's General Contractor,[2] to build an addition to their residence in Rockford, Illinois. The written agreement was signed by the Debtor on March 26, 2007. (Pl.'s Ex. 4.) The price for labor and materials was $33,281, and the contract provided for payment in four installments: "20% down, 20% set foundation, 40% framing up, ready to start drywall, 20% on completion of our work." (Id.) Before commencing work the Debtor asked to see certified checks for each of the four proposed installment payments. On or about June 25, 2007, Ms. Taylor obtained four cashier's checks for the required sums payable to the order of Snyder's General Contractor. (Pl.'s Ex. 5.) On the same day the Taylors gave the Debtor a certified check for $6,656.20 as payment for the first installment. The Debtor and the subcontractors she hired began construction shortly afterward, and around July 20, 2007, the Taylors paid Snyder the second installment of $6,656.20 using another cashier's check. (Pl.'s Ex. 5.)

With framing only partially finished, the insulation was not installed and the project was not yet ready for the drywall on September 17, 2007, when Ms. Taylor's husband suddenly died at the house. The Debtor claims that in order to "give Ms. Taylor space" after his death, she started doing exterior work instead (including exterior siding, one of the third phase projects) rather than prepare the interior for the drywall and complete the second phase of the project.

---

[1] To the extent that any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

[2] No information was given in the pleadings or at trial about the nature or form of this business. The Debtor listed in her bankruptcy schedules that she was the 100% owner of a Snyder's General Contractor, LLC, but indicated that the LLC was formed in January 2012, well after the events related to this adversary. The Plaintiff's contract did not denote whether the company was a corporation or limited liability company. (Ex. 4). Presumably the company was an unincorporated sole proprietorship at the dates of the relevant events.

After Ms. Taylor's husband died, the Debtor again expressed concern about Ms. Taylor's ability to pay for the complete project. Between September 17 and September 27, the Debtor made several demands for payment. On September 26, 2007, the Debtor called Ms. Taylor to demand the third installment payment. Ms. Taylor responded that the third payment was not yet due. During this conversation, Ms. Taylor informed the Debtor that she wanted to speak with her attorney. Ms. Taylor was unable to do so, however, until the next day. On September 27, 2007, the Debtor went to see Ms. Taylor at her house where she again demanded payment. An altercation ensued. The Debtor left, only to return to the residence later that day. Ms. Taylor then called her attorney, handing the phone to the Debtor who then spoke with him. Finally, Ms. Taylor agreed to pay the Debtor $10,000 and the Debtor promised to resume work upon receiving that sum and proof that Ms. Taylor held a cashier's check for the remainder of the full contract price.

Ms. Taylor gave the Debtor the $10,000 cashier's check on or about September 27. The Debtor testified without contravention that at the time she received the payment she intended to and had the ability to complete the project, but she did no further work because she never saw the requested proof of funds for the final payment. The Debtor testified that September 22, 2007 was the last day she performed work on the project. Ms. Taylor hired a different contractor on October 20, 2007 to complete the project for $9,600. (Pl.'s Ex. 6.)

The Debtor admits that she prepared and signed a document entitled "Statement of Claim for Mechanics Lien" in December, 2007. (Pl.'s Ex. 10.) The Debtor testified that she spoke with an attorney before preparing her "Statement of Claim." She claimed that while the attorney advised her informally, she prepared and filed the statement herself because she could not afford to retain him. At or about the same time, the Debtor sent Ms. Taylor a demand letter that stated:

"I have filed a mechanics lien on your property ... for the balance due." (Id.) The Debtor wrote further that a "balance of $6,680.40[3] is past due" and that if "the payment is not received within 30 days I will be forced to file a suit to foreclose on the mechanics lien." (Id.)

The Debtor testified several times that she personally filed the Statement of Claim of Mechanics Lien with the Winnebago County Recorder's Office. A stamped copy of the document shows that it was notarized and recorded on December 27, 2007. (Pl.'s Ex. 11.) The Debtor further admits that she recorded the lien against Ms. Taylor's residence at this time even though the construction work had not been completed. In the document, "Marta Snyder / Snyder General Contractor" purports to claim a lien on Ms. Taylor's residence. The Statement of Claim further represents that the "job was completed on the 22 day of September, 2007." (Id.) The Debtor's Statement of Claim also represents that of the $33,453 contract price, she had been paid $23,484.40, leaving a balance due of $9,968.60. The Debtor "further represent[ed] that there is now due [her] the said balance of $9,968.60 which respondents neglect and refuse to pay though requested, by reason whereof Claimant is entitled to a lien on said premises and the improvements thereon for said sum and interest from the maturity of the debt." (Id.)

In December 2008, Ms. Taylor commenced a state court action against the Debtor, Snyder's General Contractor, and the Debtor's sister-in-law.[4] Her second amended complaint alleged breach of contract, intentional infliction of emotional distress and slander of title. The claims for breach of contract and slander of title, along with a counterclaim for foreclosure and

---

[3] At trial, the Debtor testified that the payment of $10,000 was a compromise and that she believed she was owed $13,000 based on the amount of work she had performed to that date. She further testified that she had demanded $6,680.40 for what she believed to be the unpaid balance based on work performed plus the cost of a $3,000 custom countertop that the Debtor had purchased but not installed.

[4] Ms. Taylor alleged that the Debtor's sister-in-law, who was a friend of Ms. Taylor's, had also asked Ms. Taylor to pay the third installment on or about September 17, 2007. Ms. Taylor failed to demonstrate any such conversation took place at the Debtor's request.

breach of contract, were tried before a jury which returned a verdict in favor of Ms. Taylor.[5]  For

the slander of title count, the jury instructions provided that Ms. Taylor had the burden of

proving that:

1.   Marta Snyder made a false and malicious publication, either oral or written;
2.   Such publication disparages Linda Taylor's title to the property; and
3.   Damages due to such publication.

To demonstrate malice Linda Taylor must show that Marta Snyder knew that the disparaging statements were false or that the statements were made with reckless disregard of their truth or falsity.  Marta Snyder acted with reckless disregard if she published the allegedly damaging matter despite a high degree of awareness of its probable falsity or if Marta Snyder had serious doubts as to its truth.

(Ex. 17.)  Further, the instructions provided:

If you find that Marta Snyder acted with malice and proximately caused injury to Linda Taylor, and if you believe that justice and the public good require it, you may . . . award an amount which will serve to punish Marta Snyder and to deter her and others from similar conduct.

(Id.)  The jury returned a plaintiff's verdict and on June 7, 2011, the state court entered judgment

against the Debtor "d/b/a Snyder's General Contractor" and in favor of Ms. Taylor.  The

judgment awarded the Plaintiff $11,000 on the breach of contract claim,[6] as well as $1,700 in

compensatory damages and $1,000 in punitive damages on the slander of title claim.

Ms. Taylor then petitioned the trial court to award her attorneys' fees.  At the direction of

the state court judge the parties reached an agreement as to the fees solely attributable to the

slander of title claim.  In February 2012, the state court accepted and entered an agreed order

awarding Ms. Taylor $13,000 for the attorney fees she incurred on her slander of title claim.

The Debtor filed her voluntary Chapter 7 petition on February 22, 2013.  Her schedules

---

[5] It is unclear from the record what happened to the claim for intentional infliction of emotional distress.  Neither the judgment nor the jury instructions made any reference to such claim.
[6] At trial before this Court, the parties stipulated that the amount of the judgment for breach of contract was subsequently reduced by the state court, but did not clarify by how much it had been reduced.

filed several weeks later admit the judgment in the amount of $19,868.44 as an unsecured non-priority claim. Shortly before the bankruptcy case closed, Ms. Taylor commenced this adversary proceeding seeking to except from discharge under 11 U.S.C. § 523(a)(6) the judgment on the grounds that it represents a debt for "willful and malicious injury." This Court conducted a trial on the adversary complaint over several weeks during which the Plaintiff and the Debtor testified, among others. At the close of the evidentiary proceedings, the the parties were given leave to file post-trial briefs which, after some delay on the part of the Debtor, were filed.

## DISCUSSION

Section 523(a)(6) of the Bankruptcy Code excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §523(a)(6). An "injury" for purposes of Section 523(a)(6) is a "violation of another's legal right, for which the law provides a remedy." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citation omitted). Willful and malicious injury "is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012). Maliciousness "exists when one acts in 'conscious disregard of one's duties or without just cause or excuse.'" *Horsfall*, 738 F.3d at 775 (quoting *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)). The party seeking to find a debt non-dischargeable under Section 523(a)(6) bears the burden of proof by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991).

### *Slander of Title Claim*

The "act of maliciously recording a document which clouds another's title to real estate is actionable as slander of title," a cause of action characterized to be a type of tort. *Contract Dev. Corp. v. Beck*, 627 N.E.2d 760, 764 (Ill. App. Ct. 1994) (mechanics lien). The Seventh Circuit has recognized that an Illinois judgment for slander of title may be non-dischargeable under Section 523(a)(6), at least in some instances. *See, e.g., Gambino v. Koonce*, 757 F.3d 604 (7th Cir. 2014) (Illinois judgment for slander of title for use of forged deeds and other fraudulent documents to improperly gain title held non-dischargeable).

Although federal courts have exclusive jurisdiction to determine nondischargeability under Section 523(a)(6), *see* 11 U.S.C. §523(c)(1); *Meyer v. Rigdon*, 36 F.3d 1375, 1378-79 (7th Cir. 1994), collateral estoppel "bars relitigation of issues determined in prior court actions and applies to discharge exception proceedings." *Gambino*, 757 F.3d at 608 (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)). Because the judgment at issue in this case was rendered by an Illinois state court, "the law of Illinois determines the extent to which the state court decision should be given preclusive effect." 757 F.3d at 608 (citing 28 U.S.C. §1738). Under Illinois law, collateral estoppel requires that "(1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." 757 F.3d at 608-09 (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378 (Ill. 2000)). In addition, "the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Id.* There is no dispute that the Debtor was a party in the state court action. Nor is there any question that the state court judgment at issue

here is a final judgment on the merits that was fully litigated.

The issue of malice decided in the state court action is identical to the issue of malice for purposes of Section 523(a)(6) of the Bankruptcy Code and necessary to the judgment for slander of title. Malice is a necessary element to recover damages for a claim of slander of title in Illinois. *See, e.g. Contract Dev. Corp.*, 627 N.E.2d at 671 (finding that property owners had "failed to sustain their burden of proving that [construction manager] acted with malice in filing the mechanic's lien"). To prove slander of title in Illinois, the plaintiff must prove that: (1) the defendant made a false and malicious publication; (2) the publication disparaged the plaintiff's title to his property; (3) the plaintiff suffered damages due to the publication; and (4) the defendant acted with malice. *Id.* (citing *Chi. Title & Trust Co. v. Levine*, 789 N.E.2d 769 (Ill. App. Ct. 2002)). Malice for purposes of slander of title can be shown if the defendant knew that the disparaging statements were false or had serious doubts as to the truth of the slandering documents. *Id.* To enter the verdict against the Debtor, therefore, the state court necessarily determined that the Debtor filed the mechanics lien knowing that it contained false and disparaging comments, or with serious doubts as to its truth, without just cause or excuse and in violation of a tort duty[7] imposed by Illinois common law. Moreover, the state court necessarily determined that the damages suffered by the Plaintiff were caused by a malicious publication. Therefore, the entry of judgment on the slander of title count by the state court precludes the Debtor from contesting here whether she maliciously injured the Plaintiff by recording the false statement of claim for mechanics lien. *See also Gambino*, 757 F.3d 604.

The Plaintiff also presented evidence at the bankruptcy trial that demonstrates that the

---

[7] *See* Restatement (Second) of Torts § 4 (1965) ("The word 'duty' is used throughout the Restatement of this Subject to denote the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed for any injury sustained by such other, of which that actor's conduct is a legal cause.").

injury caused by the recordation was intended to inflict injury or substantially certain to result in injury and therefore willful. The Debtor testified that she performed no work on the project after September 2007 and that the project was not complete as of the time she last performed work. The Debtor also testified that she refused to complete the project because the Plaintiff had not provided proof of funds sufficient to pay the complete project price and because the Debtor felt insulted and mistreated during their altercation on September 27, 2007. The Debtor was clearly aware that she had not completed the project and yet personally prepared and recorded a statement of claim for mechanics lien in December 2007 that falsely stated that the "job was completed on the 22[nd] day of September, 2007." (Pl.'s Ex. 11.) The same document also claimed that the full unpaid portion of the contract price, $9,968.60, was "now due and unpaid." (Id.) Although the Debtor might have thought she was entitled to some form of partial payment for the work she had done on the exterior portions of the project, the evidence demonstrates that she knew that the project was not complete and that she knew she was not entitled to the full contract price.

The evidence also shows that the acts in question were intentional, not merely negligent, and were either motivated by the intent to inflict the injury or were "substantially certain to result in injury." *Gerard v. Gerard*, 780 F.3d 806, 811 (7th Cir. 2015) (quoting *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013)) (internal quotation marks omitted). The evidence shows that the Debtor intended or knew that the recording of the false mechanics lien would cause injury to the Plaintiff's property interest in her home. Although not then formally represented by an attorney, the Debtor testified that she spoke informally with an attorney before preparing and filing the claim for mechanics lien. Moreover, she prepared, signed and sent a demand letter, dated the day before she recorded the lien, stating that "I have filed a mechanics

lien *on your property, located at 4216 Tallwood Avenue, Rockford, Illinois, 61114*, for the balance due on the above contract." (Pl.'s Ex. 10 (emphasis added).)  But more than merely threaten, the Debtor actually filed the claim of lien with the county recorder.  She did so claiming the full contract price as due and representing that the construction project was complete, even though she knew this to be false and that she was not entitled to the full price.  Both the demand letter and the recorded claim of lien specifically describe the Plaintiff's property by address, and in the claim of lien by property code and legal description. (Pl.'s Ex. 11.)

The Debtor's undisputed actions that formed the basis for the jury's intentional tort verdict demonstrate her awareness that recording would have a harmful effect on the Plaintiff's property.  Moreover, in the demand letter the Debtor threatened that "if payment is not received within 30 days I will be forced to file a suit to foreclose on the mechanics lien." (Id.)  The preponderance of the evidence shows that the Debtor recorded the claim of lien either to inflict injury on the Plaintiff's property or knowing it was highly likely to result from her act and with the intent to coerce the Plaintiff into paying the remaining amount under the contract because of the Plaintiff's need to clear the property of the resulting cloud on title and obtain an interest in the real estate if the Plaintiff failed to pay.  The Plaintiff, therefore, has met her burden to demonstrate that the judgment for slander of title is a debt for a willful and malicious injury that is excepted from discharge under Section 523(a)(6).

### *Attorneys' Fees and Punitive Damages*

The Plaintiff also seeks to find the state court's award of attorneys' fees non-dischargeable.  Under Illinois law, "recovery for slander of title actions permit[s] recovery of those costs and attorney fees which directly flow from the wrongful disparagement." *Gambino v.*

*Boulevard Mortg. Corp.*, 922 N.E.2d 380, 423 (Ill. App. Ct. 2009) (citing *Home Invs. Fund v. Robertson*, 295 N.E.2d 85 (Ill. App. Ct. 1973)). The Debtor's state court counsel testified at the bankruptcy trial that the attorneys' fees were solely awarded with respect to the slander of title action. The attorney emphasized that although the state court action also included a count for breach of contract, his engagement agreement did not provide for attorneys' fees. He further testified that after the state court indicated that it would grant attorneys' fees in connection with the slander of title count, he and the Plaintiff's counsel reviewed Plaintiff's counsel's timesheets, removing any time for matters other than the slander of title count, and from this prepared the agreed order for fees that was entered by the state court.

The Supreme Court has held with respect to fraud claims that are non-dischargeable under Section 523(a)(2)(A), "any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud" or "attorney's fees and costs of suit associated with establishing fraud" is also non-dischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 221, 223 (1998).[8]   The Seventh Circuit has similarly found that consequential and punitive damages "derivative from the injury that the debtor committed intentionally" may also be non-dischargeable under Section 523(a)(6). *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012). The debtor in that case had attempted to murder his ex-spouse by willfully and maliciously beating her and then sealing her in a garbage can filled with snow, causing her to suffer a miscarriage and the amputation of her toes. The Seventh Circuit held that not only were the direct damages that the debtor specifically intended excepted

---

[8] The discharge exception considered in *Cohen*, Section 523(a)(2)(A), makes non-dischargeable "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2). The Supreme Court held that the phrase "'to the extent obtained by' modifies 'money, property, services, or ... credit' – not 'any debt,'" and held that the phrase "debt" is broad enough to encompass treble damages provided for by statute." *Id.* When read together with the historical treatment of all "judgments in actions for frauds" as non-dischargeable under the Bankruptcy Act of 1898, the Supreme Court concluded that Section 523(a)(2)(A) of the Bankruptcy Code "bars the discharge of all liability arising from fraud." *Id.*

from discharge, but also that Section 523(a)(6) extended to the consequential damages that were foreseeable, including punitive damages and claims for loss of consortium of the ex-wife's husband and children notwithstanding the fact that the debtor did not intend to injure the husband and children. *Id.* As Judge Posner explained:

> [W]e imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act. To allow him to shirk liability by discharging his judgment debt in those circumstances would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law.

*Id.* at 324.

The court in *Jendusa* did not explicitly address attorneys' fees. However, where the fee award is derivative from the same basis as the non-dischargeable debt, courts have found the attorneys' fees also to be non-dischargeable under Section 523(a)(6). *In re Horton*, 85 F.3d 625 (5th Cir. 1996); *Jan S. Weinstein & Assocs., Ltd. v. Lymberopoulos (In re Lymberopoulos)*, 453 B.R. 340, 344 (Bankr. N.D. Ill. 2011) ("Because the judgment is nondischargeable under section 523(a)(6) for willful and malicious injury, the attorney's fee award is also nondischargeable."). *See also Klingman v. Levinson*, 831 F.2d 1292, 1296-97 (7th Cir. 1987) (dischargeability under Section 523(a)(4)) ("Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.").

Here, the preponderance of the evidence shows that the attorneys' fees and punitive damages awarded by the state court are derivative from and solely relate to the judgment for slander of title. Because that judgment is non-dischargeable under Section 523(a)(6), the related punitive damages and attorneys' fees awarded by the state court are non-dischargeable as well.

### *Breach of Contract*

The Plaintiff also argues that the portion of the state court judgment for breach of contract, originally in the amount of $11,000, is non-dischargeable under Section 523(a)(6). However, Ms. Taylor has failed to demonstrate that this portion of the judgment is a debt for a willful and malicious injury under the terms of that section of the Bankruptcy Code.

The Supreme Court has held that a breach of contract claim in itself will not support an action under Section 523(a)(6) even when the defendant's breach was "knowing." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). *Geiger* involved a claim for medical malpractice, not breach of contract. While affirming the lower courts' findings that the malpractice claim was dischargeable, the Court cautioned that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* In so doing, the Supreme Court rejected an interpretation of Section 523(a)(6) proposed by the creditor which would encompass "situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor." 523 U.S. at 62. The Court noted that the suggested broader interpretation of Section 523(a)(6) could encompass a "knowing breach of contract" and would therefore result in a "construction so broad [that it] would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" 523 U.S. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)). It further pointed out that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts [and i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62.

Some differences arose among the courts of appeal after *Geiger* as to whether a tortious act is required for Section 523(a)(6). The Ninth Circuit has concluded that "to be excepted from

discharge under § 523(a)(6), a breach of contract must be accompanied by some form of 'tortious

conduct' that gives rise to 'willful and malicious injury.'" *Petralia v. Jercich (In re Jercich)*, 238

F.3d 1202, 1206 (9th Cir. 2001). More recently, that court has explained that the Supreme

Court's reasoning in *Geiger* requires "[s]omething more than a knowing breach of contract . . .

before conduct comes within the ambit of § 523(a)(6), and *Jercich* defined that 'something more'

as tortious conduct." *Lockerby v. Sierra*, 535 F.3d 1038, 1041 (9th Cir. 2008). The Sixth Circuit

similarly suggested in an unpublished decision that economic damages caused by a breach of

contract are not exempt from discharge under Section 523(a)(6) even when the debtor knows that

such damages will result from her actions. *Steier v. Best (In re Best)*, 109 Fed. Appx. 1 (6th Cir.

June 30, 2004). There, the court of appeals held that for purposes of Section 523(a)(6), the

debtor's conduct "must be more culpable than that which is in reckless disregard of creditors'

economic interests and expectancies, as distinguished from … legal rights." *Id.* (quoting *In re

Mulder*, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004)). Moreover, the court found that

"knowledge that legal rights are being violated is insufficient to establish malice." *Id.*

     In contrast, the Fifth and Eleventh Circuits have held that an intentional breach of

contract can support a claim for non-dischargeability under Section 523(a)(6) even in the

absence of tortious acts. The Fifth Circuit distinguished *Geiger*'s reference to a "knowing"

breach of contract from an "intentional" breach of contract, holding that "a knowing breach of a

clear contractual obligation that is certain to cause injury may prevent discharge under Section

523(a)(6), regardless of the existence of separate tortious conduct." *Williams v. Int'l Bhd. of

Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 510 (5th Cir. 2003). *See also Husky Int'l

Elec., Inc. v. Ritz (In re Ritz)*, 787 F.3d 312, 322 (5th Cir. 2015) (citing *Williams*). The Eleventh

Circuit similarly concluded that *Geiger*'s "analogy to intentional torts merely emphasizes that

§523(a)(6) requires a creditor to show that a debtor 'intended' the consequences of his actions"

and that nothing in that decision "requires us actually to determine whether a debtor technically

committed a tort under applicable state law." *Kane v. Stewart Tilghman Fox & Bianchi Pa (In re*

*Kane)*, 755 F.3d 1285, 1296 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 718 (2014).[9]

However, the Fifth and Eleventh Circuit courts appear to reach this conclusion by

downplaying Section 523(a)(6)'s separate requirement that the injury be "malicious." *Geiger*

focused primarily on the issue of "willfulness," not malice, and particularly on the fact that the

"word 'willful' in (a)(6) modifies the word 'injury.'" 523 U.S. at 61. *Williams* mentions malice

but concludes that Section 523(a)(6) includes "implied malice" and that the "definition of

implied malice is identical to the *Kawaauhau* Court's explanation of a willful injury." 337 F.3d at

509. Thus, the court concluded, both the willfulness and maliciousness elements of Section

523(a)(6) can be "condensed into a single inquiry of whether there exists either an objective

substantial certainty of harm or a subjective motive to cause harm on the part of the debtor." *Id.*

(internal citation and quotation marks omitted).

But the simplified test espoused by the Fifth Circuit is essentially the test advocated by

the creditor in *Geiger* that was rejected by the Supreme Court. The creditor in *Geiger* relied on

language from the Supreme Court's 1904 opinion, *Tinker v. Colwell*, to argue that an act that

"necessarily causes injury and is done intentionally, may be said to be done willfully and

maliciously, so as to come within the [bankruptcy discharge] exception." *Tinker v. Colwell*, 193

U.S. 473, 485 (1904). The Supreme Court rejected this as a full statement of the standard, noting

that the quoted language from *Tinker* was "less than crystalline" and needed to be placed within

its context. 523 U.S. at 64. Emphasizing that the claim in *Tinker* was "solidly within the

---

[9] The Tenth Circuit in an unpublished opinion that made no reference to torts also held that "nothing in *Geiger* indicates the Supreme Court's intention to immunize debtors under 11 U.S.C. § 523(a)(6) for 'willful and malicious' breaches of contract." *Sanders v. Vaughn (In re Sanders)*, No. 99-6396 (10th Cir. 2000).

traditional intentional tort category," the Supreme Court "so confine[d] its holding." 523 U.S. at
63.

*Tinker* affirmed a determination that a claim for criminal conversion was non-
dischargeable under the substantially similar exception for "willful and malicious injuries to the
person or property of another" under the Bankruptcy Act of 1898. The Supreme Court stated
that "a willful disregard of what one knows to be his duty, an act which is against good morals,
and wrongful in and of itself, *and* which necessarily causes injury and is done intentionally, may
be said to be done willfully and maliciously, so as to come within the exception" to discharge.
193 U.S. at 487 (emphasis added). Thus, rather than finding an intentional act which necessarily
causes injury to be sufficient, the Supreme Court in *Tinker* held that the creditor also needed to
demonstrate a willful disregard of what the debtor knew to be his duty and which was against
good morals and wrongful in and of itself. In doing so the Supreme Court recognized willfulness
and malice to be separate elements and that it was "not necessary in the construction we give to
the language of the exception in the statute to hold that every willful act which is wrong implies
malice." 193 U.S. at 489. While at one point defining "malice" as "a wrongful act, done
intentionally, without just cause or excuse," 193 U.S. at 485-86,[10] the Court then illustrates its
reasoning by discussing with approval a lower court case which held that if an "act was
unlawful, wrongful, *and tortious*, and being willfully done, it was, in law, malicious." 193 U.S.
at 486 (quoting *In re Freche*, 109 Fed. 620 (D.N.J. 1901)) (emphasis added). Thus, both *Tinker*
and *Geiger* recognize that malice is a separate requirement from intent, and one which generally
requires a tortious act.

Although it has not explicitly ruled on the question, the Seventh Circuit has strongly
implied that a tortious act is required to support an action under Section 523(a)(6) in a number of

---

[10] *See also Geiger*, 523 U.S. at 63.

post-*Geiger* cases. In an unpublished opinion, *Radivojevic v. Pickens (In re Pickens)*, the court expressed doubt that Section 523(a)(6) could provide a basis for excepting from discharge a judgment for a breach of an apartment lease. No. 98-1985, 234 F.3d 1273 (7th Cir. Aug. 1, 2000). The court explained that Section 523(a)(6) "is intended to prevent the discharge of debts incurred as a result of intentional torts [while the debtor's] state court judgment is based upon a breach of contract, not an intentional tort." *Id.*

More recently, the court raised doubt whether a breach of contract claim that did not involve tortious conduct could support an action under Section 523(a)(6). *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 773 (7th Cir. 2013). In *Horsfall*, the court emphasized that the exception to discharge needed to be interpreted narrowly and, indeed, not "all state-law intentional torts are 'willful' for purposes of section 523(a)(6)." 738 F.3d at 774-775. A broader interpretation "[i]f accepted … would risk transforming every state-law intentional tort into a non-dischargeable debt, contrary to the Supreme Court's opinion in *Geiger*." *Id.*[11] *Horsfall* noted that "of the four theories" that the plaintiff had "raised in the state court, only the intentional torts of interference and conversion could plausibly constitute willful and malicious injury." 738 F.3d at 773. In doing so, the decision strongly implied that "breach of contract" and "unjust enrichment," the theories also raised in the state court proceeding, could *not* plausibly constitute willful and malicious injury for purposes of Section 523(a)(6). *Id.*[12]

---

[11] In a pre-*Geiger* case, *N.I.S. Corp. v. Hallahan (In re Hallahan)*, the Seventh Circuit affirmed a bankruptcy court's ruling that a debt for breach of a covenant in an employment contract was non-dischargeable under Section 523(a)(6) where the debtor breached the covenant "with sufficient willfulness." 936 F.2d 1496, 1500 (7th Cir. 1991). However, the debtor in *Hallahan* "apparently concur[red] in this view" and did not contest the point – instead only arguing that the covenant was unenforceable, that damages had not been sufficiently proven and that he had a right to a jury trial. *Id.* Moreover, *Hallahan* predates and appears to be inconsistent with the Supreme Court's decision in *Geiger. See, e.g., Wish Acquisition, LLC v. Salvino*, No. 07-C-4756, 2008 WL 182241 (N.D. Ill. Jan. 18, 2008); *Gen'l Medicine, P.C. v. Monke (In re Monke)*, No. 10-CV-2273, 2011 WL 1790403 (C.D. Ill. May 10, 2011).

[12] The opinion by the bankruptcy court which was affirmed by the Seventh Circuit in *Horsfall* was even clearer, stating that, "[s]ince *Geiger*, courts have routinely found that a debt arising from a knowing, or even intentional, breach of contract are not excepted from discharge under § 523(a)(6)." *In re Horsfall*, No. 10-B-12596, 10-A-00179,

Rather, *Horsfall* holds that the Seventh Circuit's pre-*Geiger* definition of maliciousness remains viable and "requires that the debtor acted 'in conscious disregard of [his] duties or without just cause or excuse.'" *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (quoting *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)). Thus, while not explicitly addressing the issue, these decisions strongly suggest that the terms "duties" and "excuse" used in *Horsfall*'s analysis of Section 523(a)(6) must be interpreted in the tort sense rather than the contract sense. The bodies of tort law and contract law "serve different interests and protect different expectations." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 764 (7th Cir. 2013). "Contract law encourages private ordering and protects parties' bargained-for expectations [while] Tort law establishes and incentivizes a set of default behavioral norms for society as a whole, allocating losses and affording compensation for injuries occurring in the course of human activity." *Id.* As the comments to Section 4 of the Restatement (Second) of Torts note accordingly, while some similarities may be found between a duty in tort and one imposed by contract,

> there are certain particulars in which the duty in contract differs from that in tort, and which entail differences in the effect of the breach of the duty in creating liability. The duty in contract is normally to do or refrain from doing a particular or definite thing irrespective of the end which is to be served. The purpose of the contract duty is to secure the receipt of the thing bargained for. The breach of the contract prevents this from being obtained, and the harm which the performance of the duty would have prevented has occurred. There is, therefore, liability even if only for nominal damages. On the other hand, the duty in tort is only occasionally to do or refrain from doing a particular thing, and even then the doing or non-doing of the thing is not the end or the purpose of the duty itself. It is merely a means whereby the interest protected by the duty can be made secure. Therefore, the harm which the duty is intended to prevent does not occur until the interest protected by it is invaded and, therefore, until such invasion occurs there can be no liability for the breach.

Restatement (Second) of Torts § 4 cmt. c (1965).

---

2011 WL 1628472 (Bankr. W.D. Wisc. Apr. 26, 2011).

Liability for breach of contract is generally strict liability, meaning that the "contracts often contain an insurance component" by which the "promisor promises in effect either to perform or to compensate the promisee for the cost of nonperformance." *Patton v. Mid-Continent Sys., Inc.*, 841 F.2d 742, 750 (7th Cir. 1988). Yet if, for example, the promisor discovers "that his performance is worth more to someone else ... efficiency is promoted by allowing him to break his promise, provided he makes good the promisee's actual losses." *Id.* This policy is expressly carried through in the Bankruptcy Code in Section 365(a) and (g), which permits a trustee or debtor in possession to reject disadvantageous executory contracts and treats such rejection as a breach of the contract with only a claim against the estate. 373 B.R. at 591. As the bankruptcy court in *Wish Acquisition, LLC v. Salvino (In re Salvino)* noted, "if §523(a)(6) applied to contracts, the Code would punish under that provision the very conduct that it encourages under § 365(a) – intentional breaches of contract that maximize the value of the debtor's property." 373 B.R. 578 (Bankr. N.D. Ill. 2007), *aff'd by* No. 07-C-4756, 2008 WL 182241 (N.D. Ill. Jan. 18, 2008).

As noted in *Geiger*, the "willful and malicious injury" exception to discharge has traditionally been limited to tortious activities, 523 U.S. at 61-62, and thus like tort remedies appears intended to address breaches of duties imposed by law to protect society as a whole rather than privately bargained expectations.[13] *See also Jendusa-Nicolai*, 677 F.3d at 324 (willful and malicious injury exception helps protect "the deterrent efficacy of tort law"). In like view, Illinois like many other jurisdictions, recognizes the economic loss doctrine which "bars tort

---

[13] In similar fashion, breaches of duties imposed by statute or other law to protect society as a whole may also constitute a malicious injury even if not strictly categorized as a common law tort. *See, e.g., Musilli v. Droomers (In re Musilli)*, No. 08-2572, 379 Fed. Appx. 494 (6th Cir. June 3, 2010) ("courts uniformly have held that a contempt penalty constitutes a nondischargeable willful-and-malicious injury under § 523(a)(6).") (collecting cases); *Sells v. Porter (In re Porter)*, 539 F.3d 889 (8th Cir. 2008) (judgment for sexual harassment, constructive discharge and retaliation under both Title VII and Arkansas Civil Rights Act, including compensatory and punitive damages and attorneys fees, were willful and malicious injury under Section 523(a)(6)).

recovery for purely economic losses based on failure to perform contractual obligations" unless there is "an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself." *Catalan v. GMAC Mortg. Co.*, 629 F.3d 676, 693 (7th Cir. 2011) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. 1982)). Similarly, most jurisdictions do not permit punitive damages for the breach of contract unless the breach gives rise to a tort. *See, e.g. Barnes v. Gorman*, 536 U.S. 181, 187 (2002). Thus, for example, in Illinois "punitive damages may not be given for a mere breach of contract [unless] the defendant is also found to have committed an independent tort, separate from the breach of contract." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 638 (7th Cir. 1992). The "independent tort" exception to this rule "is to separate mere wilful breaches of contract, which require no more compensation than an unwilling breach to make the plaintiff whole, and other wanton or malicious acts that cause a distinct injury and merit the deterrent of punitive damages." *Id.*

A majority of recent decisions by courts within the Seventh Circuit applying Section 523(a)(6) have held that some form of tortious conduct is required for the breach of contract claim to be non-dischargeable.[14]   Most of these courts relied, correctly we believe, on one or

---

[14] *See, e.g., Wish Acquisition, LLC v. Salvino*, No. 07-C-4756, 2008 WL 182241 (N.D. Ill. Jan. 18, 2008); *Stair One, Inc. v. Hivon (In re Hivon)*, No. 14-A-710, 14-B-26441, 2015 WL 687124 (Feb. 13, 2015); *Trivedi v. Levine (In re Levine)*, No. 14-A-461, 14-B-10740, 2014 WL 7187007 (Bankr. N.D. Ill. Dec. 16, 2014); *Nat'l Union Fire Ins. Co. v. Krause (In re Krause)*, 510 B.R. 172, 182 (Bankr. N.D. Ill. 2014); *Schaul v. Lugwig (In re Ludwig)*, 508 B.R. 48, 57 (Bankr. N.D. Ill. 2014); *Morales v. Giddens (In re Giddens)*, 514 B.R. 542, 550 (Bankr. N.D. Ill. 2014); *On v. Hong (In re Hong)*, 496 B.R. 880, 885 (Bankr. N.D. Ill. 2013); *Oberg v. Chrispin (In re Chrispin)*, No 11-A-443, 10-B-47833), 2012 WL 3126807 (Bankr. N.D. Ill. July 31, 2012); *Oakland Ridge Homeowners Assoc. v. Braverman (In re Braverman)*, 463 B.R. 115, 119-20 (Bankr. N.D. Ill. 2011); *Consumers Cooperative Credit Union v. Munson (In re Munson)*, No. 10-A-218, 10-B-1559, 2010 WL 3768017 (Bankr. N.D. Ill. Sept. 17, 2010); *Koplin v. Ginsberg (In re Ginsberg)*, No. 09-A-188, 08-B-30836, 2009 WL 4891815 (Bankr. N.D. Ill. Dec. 16, 2009); *Neiman v. Irmen (In re Irmen)*, 379 B.R. 299, 312-13 (Bankr. N.D. Ill. 2007); *Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578 (Bankr. N.D. Ill. 2007); *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 722-23 (Bankr. N.D. Ill. 2002); *Gen'l Medicine, P.C. v. Monke (In re Monke)*, No. 10-CV-2273, 2011 WL 1790403 (C.D. Ill. May 10, 2011); *Lukes v. Stover (In re Stover)*, No. 12-A-50023, 11-B-13506, 2012 WL 4867404 (Bankr. S.D. Ind. Oct. 12, 2012); *Halliburton Energy Servs., Inc. v. McVay (In re McVay)*, 461 B.R. 735, 742 (Bankr. C.D. Ill. 2012); *First Weber Grp., Inc. v. Horsfall (In re Horsfall)*, No. 10-A-179, 10-B-12596, 2011 WL 1628472 (Bankr. W.D. Wisc. Apr. 26,

more of the reasons set forth in the opinion of Judge Wedoff in *In re Salvino* and in the

unpublished opinion of Judge Zagel affirming that decision, namely that: (1) the terms "willful

and malicious" have traditionally been used in the context of tort law not contract law; (2) the

precursor to Section 523(a)(6) in the Bankruptcy Act of 1898 was generally applied only in

situations of tortious conduct and Congress should be presumed to have intended to continue that

practice when it chose to use the same terms in the 1978 Bankruptcy Code; (3) exceptions to

discharge should be construed narrowly; (4) a policy of making intentional breaches of contract

non-dischargeable is inconsistent with the policy behind Section 365(a) which authorizes a

debtor in possession to reject executory contracts; (5) the potential for a breach of contract and

the ensuing economic damage is foreseeable by both contracting parties; and (6) making

damages for breach of contract non-dischargeable whenever the breach was foreseeable would

vastly decrease the number of dischargeable debts. *Wish Acquisition, LLC v. Salvino (In re*

*Salvino)*, 373 B.R. 578 (Bankr. N.D. Ill. 2007), *aff'd by* No. 07-C-4756, 2008 WL 182241 (N.D.

Ill. Jan. 18, 2008).

Consideration of these factors further support viewing Section 523(a)(6) to not apply to

mere breaches of contract unless the breach also included tortious conduct. Well-taken is Judge

Zagel's concern that "[w]ithout the tortious conduct requirement, the exception under §523(a)(6)

would be unduly expanded" and reach nearly all breaches of contract. 2008 WL 182241, at *4.

As he further explained:

---

2011); *MBNA Am. Bank, N.A. v. Hostetter*, 320 B.R. 674, 680 n. 4 (Bankr. N.D. Ind. 2005). *But see Rose v. Gelhaar
(In re Gelhaar)*, No. 09-A-504, 09-B-7578, 2010 WL 4780314 (Bankr. N.D. Ill. Nov. 16, 2010) (*Geiger* "did not
preclude a breach of contract claim from rising to the level of willful and malicious conduct"); *Baker Dev. Corp. v.
Mulder (In re Mulder)*, 307 B.R. 637, 642 (Bankr. N.D. Ill. 2004); *A.V. Reilly Int'l, Ltd. v. Rosenzweig (In re
Rosenzweig)*, 237 B.R. 453 (Bankr. N.D. Ill. 1999) (finding intentional breach of employment contract which was
also contrary to Illinois Trade Secrets Act to be willful and malicious injury); *Condon Oil Co. v. Wood (In re Wood)*,
503 B.R. 705 (Bankr. W.D. Wisc. 2013) (taping signs over credit card readers at gas pump in violation of agreement
with creditor was willful and malicious injury); *Sinha v. Clark (In re Clark)*, 330 B.R. 702, 707 (Bankr. C.D. Ill.
2005) (citing *Williams*); *Prairie Eye Center v. Butler (In re Butler)*, 297 B.R. 741, 747 (Bankr. C.D. Ill. 2003)
(citing *Williams*).

The vast majority of contracts are entered into for reasons of pecuniary gain, and the foreseeable consequences of breach are also pecuniary. Thus, a party may intentionally breach a contract with the knowledge that an injury may result, but the nature of the injury is in large part foreseeable, and, more importantly, assumed by both parties as part of the risk, or cost, of doing business. The injury is real, but it is not "malicious" in the sense that it deserves exception from discharge under the Bankruptcy Code.

*Id.*

Here, the Plaintiff has failed to connect her judgment for breach of contract to any tortious conduct by the Debtor. The jury instructions reveal the judgment for breach of contract to be based on the failure of the Plaintiff to receive the benefits to which she was entitled under the contract because of the Debtor's failure to perform in accordance with the terms of the contract. There was nothing in the jury instructions, the state court's judgment or in the evidence presented to this Court to indicate that the portion of the judgment labeled judgment "for breach of contract claim" is anything other than simple damages for breach of contract.[15]

---

[15]     The Plaintiff argues in her post-trial brief that the Debtor admitted to the non-dischargeability of her entire debt to the Plaintiff when she failed to admit or deny a statement in the Adversary Complaint that: "The Circuit Court in the State Action entered an award against the Debtor and in favor of Taylor, which included punitive damages and attorneys' fees. This debt is non-dischargeable under the provisions of 11 U.S.C. § 523(a)(6)." (Compl. ECF No. 1, ¶¶30, 31.)  Specifically, the Debtor responded that the "defendant neither admits nor denies the allegations in" paragraphs 30 and 31. (Answer, ECF No. 9.)  The Plaintiff relies on Fed. R. Civ. P. 8(b)(6), incorporated by Fed. R. Bankr. P. 7008, which states that an "allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."

However, it is important to remember that the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  Here, the Plaintiff never filed a motion for judgment on the pleadings or a motion for summary judgment, instead first raising the argument at trial. Additionally, both the complaint and paragraph 31 are ambiguous as to whether the "debt" referred to is only the slander of title and related judgments or the breach of contract judgment as well. Finally, in the similar context of the effect of a default order, the Seventh Circuit has stated that while the effect of a failure to deny is that all "factual allegations are treated as true … the entry of a default order does not, however, preclude a party from challenging the sufficiency of the complaint." *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).  As discussed below, the Plaintiff made no factual allegations in the Complaint and offered no evidence at trial to suggest that the breach of contract judgment was in respect of any tortious conduct. *Infra* at 23 – 25.  As such, to the extent the Plaintiff seeks to find such judgment non-dischargeable under Section 523(a)(6), she failed to state a claim and is not entitled to a judgment of non-dischargeability irrespective of the Debtor's responses to paragraphs 30 and 31 of the Adversary Complaint. *See also, Sharkey v. Cochran*, No. 1:09-cv-0517-JMS-DKL, 2012 WL 967057 (S.D. Ind. Mar. 21, 2012) ("Because a party in default does not admit mere conclusions of law, the Court must consider whether the unchallenged, well-pleaded facts constitute a legitimate cause of action.").

The Plaintiff instead focuses on the circumstances underlying the judgment of the state court, namely the events surrounding the Debtor's demand for and the Plaintiff's payment of the third installment payment. The Plaintiff alleges that the Debtor "willfully and maliciously took advantage of the death of [Plaintiff's] ex-husband to extort a payment from [Plaintiff] without any legal right to the payment." (ECF No. 1, ¶26.) In her post-trial brief, the Plaintiff argues the evidence shows that the Debtor "wrongfully obtained $10,000 from [Plaintiff] before it was due by harassing her and purs[uing] a false mechanics lien." (ECF No. 38, ¶45.) As discussed above, although the false mechanics lien was found to be a willful and malicious injury, the Plaintiff failed to prove that it was connected to the state court's judgment for breach of contract.

The Plaintiff also failed to prove that the Debtor committed tortious conduct by "harassing" or "extorting" her. Ms. Taylor alleges in her Adversary Complaint that the Debtor tried "to extort" her and "harassed" her to obtain the remaining installment payments. However, neither in her pleadings nor at trial has she presented any authority to support her argument regarding the contract payments. The Seventh Circuit has explained that "conduct that would be described as 'extortion' under the laws of most other jurisdictions is prohibited in Illinois under the heading of 'intimidation.'" *U.S. v. Unthank*, 109 F.3d 1205, 1210 (7th Cir. 1997). Illinois' criminal intimidation statute, 720 ILCS 5/12-6, does not expressly recognize a civil cause of action, and the Plaintiff has not referred us to any authority to show that one exists.

Indeed, the Plaintiff's argument is at most that the Debtor made some form of implied threat not to complete the construction project if the Plaintiff did not make the third installment payment. But, under Illinois law, a threat to break a contract does not constitute actionable duress. *See, e.g., Krilich v. Am. Nat. Bank & Trust Co.*, 778 N.E.2d 1153, 1162 (Ill. App. Ct. 2002) ("Ordinarily, a threat to break a contract does not constitute duress, and to infer duress,

there must be some probable consequences of the threat for which the remedy for the breach afforded by the courts is inadequate. If there is no full and adequate remedy from the courts for the breach, the coercive effect of the threatened action may be inferred.") (quoting *Kaplan v. Keith,* 377 N.E.2d 279 (Ill. App. Ct. 1978)). Additionally, Ms. Taylor admits that she had time to speak with her attorney before making the payment, and "a finding of duress is less likely if the party has the assistance of counsel and adequate time to consider the proposed contractual terms." *Id.*

Nor has Ms. Taylor identified authority recognizing a tort claim for "harassment" for the conduct she alleges. The closest recognized tort for the facts presented here appears to be intentional infliction of emotional distress, the tort claim apparently discarded during the state court trial. *See Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (Ill. 2003). To be actionable "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." 798 N.E.2d at 80-81. Ms. Taylor, however, has failed to demonstrate that the Debtor committed any acts that would rise above mere annoyance, let alone the extreme conduct recognized to support this tort. Nor has she made the required demonstration that the acts in question caused her severe emotional distress. *See Feltmeier,* 798 N.E.2d at 80.

The parties' testimony reveals that the relevant acts at issue principally consist of a telephone conversation on September 26, 2007, in which the Debtor asked for payment of the third installment, and two in-person meetings at the Plaintiff's house on September 27, 2007. The Plaintiff was understandably in an emotionally upset state due to the sudden death of her husband at that time. But she has not shown that it was unreasonable, let alone actionable, for the Debtor to stop by her residence on the 27th. The evidence reveals that the Debtor worked on

the construction project through at least September 26. The Plaintiff herself admits that the
Debtor did no more than request payment before it was due, testifying that the Debtor "was just
standing there" and that it was she, Ms. Taylor, who "lost my temper and screamed at her to get
out."

Nor has the Plaintiff demonstrated that the Debtor coerced her to make the early
installment payment; she does not dispute that she voluntarily chose to make the $10,000
payment. Her testimony conceded that she made this payment only after speaking with her
attorney and after having the attorney speak with the Debtor by telephone on September 27. In
addition, although the Debtor admitted that not all of the conditions to the third installment
payment under the original written contract were complete as of September 27, she testified that
she believed that she was entitled to the payment because she had commenced work on the
projects final phase. The Debtor also testified that she was concerned about whether the Plaintiff
had funds available for the project from the beginning, as recognized by the Taylors obtaining
the cashier's checks, and that the Debtor continued to have concerns upon learning of the death
of the Plaintiff's husband. She testified that she had heard or was concerned that they had been
redeposited into Mr. Taylor's account before he died. She claimed that she feared that Ms.
Taylor would be unable to access this account if it was part of the probate estate. Therefore,
whether the Debtor correctly or incorrectly understood her rights and obligations, the evidence
presented shows only that the parties were embroiled in a contract dispute, and does not establish
that the Debtor's requests for payment amounted to an actionable tort.

Nor does the evidence demonstrate that the Debtor induced the Plaintiff by knowingly
making false representations in order to obtain the $10,000 payment. The Plaintiff herself
testified that the Debtor promised to resume work on two conditions: (1) the $10,000 payment

and (2) proof of Plaintiff holding a cashier's check for the balance of the contract price.  The uncontroverted testimony reveals that she never provided proof of such checks.  While this may not have been an excuse under the contract for the Debtor to cease to perform further work – and the state court apparently found that it was not – the Plaintiff has not shown that the Debtor fraudulently induced her to make the payment.

Therefore, the Plaintiff has failed to demonstrate the state court's judgment for breach of contract to be excepted from discharge under Section 523(a)(6) under any of the theories she presents.

## CONCLUSION

For the reasons set forth above, judgment will be entered in favor of the Plaintiff in part and in favor of the Debtor in part.  The portion of the state court judgment for slander of title for the amount of $1,700 and the $13,000 awarded for related attorneys' fees and $1,000 punitive damage award that are derived from the tort judgment, are excepted from discharge under 11 U.S.C. § 523(a)(6).  Judgment will be so entered in the Plaintiff's favor.  The Plaintiff has failed to prove the portion of the state court judgment for breach of contract to be exempt from discharge, and judgment will be so entered in favor of the Debtor as to that claim.  A separate judgment order will be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: December 4, 2015

_____
Thomas M. Lynch
United States Bankruptcy Judge